The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Good morning. We have four cases on the calendar this morning. The first one is 23-1339, Protopapas v. Travelers Casualty and Surety Company. Mr. Lee. Yes, Your Honor. Whenever you're ready. May it please the Court, I'm Harry Lee. I'm here for Travelers. This appeal presents three issues. Whether the remand order at issue is appealable, whether the Barton Doctrine applies so as to negate federal jurisdiction, and whether a form selection clause in another defendant's inapplicable insurance policy  Appealability, the rules of the road. 28 U.S.C. 1447 prevents appeals of remand orders only if based on the lack of subject matter jurisdiction or defects in the removal procedure. If a district court actually gives one of these reasons for a remand, an appellate court will accept that basis only if the district's court's stated reason is legally colorable. There's a push-pull between wanting too much appellate review or not enough appellate review, and the courts have landed on this in Power Acts with respect to this court deciding whether the district court's reason, if one of those reasons applied, whether that was colorable. What does that mean? Under Power Acts, the U.S. Supreme Court, it means debatable. Legally debatable. What doesn't it mean? It doesn't mean you just accept what the district court says. Its beliefs, its thoughts, or its statements. If it's not legally correct. If it's not debatable. Here, the questions are actually clear. There isn't anything to really debate. There's yes or no answers as to why the remand happened. Travers believes that the removal grounds are not colorable for two reasons. The Barton ground for remand can't be colorably based on a lack of federal jurisdiction. It is a judge-made rule. It does not come from a constitution, and it does not come from a federal statute. It is a rule as to not exercising jurisdiction in certain situations where a receiver is involved. We will get to the merits of when the Barton doctrine actually applies, but for appealability purposes, the question is, is a Barton reason for remand a statement by the district court that it does not have jurisdiction? That can't be. Barton cannot take away jurisdiction. Are you arguing that because it was court-made that it therefore doesn't have legitimacy? No. It has legitimacy in the abstention sense. It's a doctrine that's useful and applies at times. You know, there are cases that say we don't adjudicate domestic relations matters, yet our statutes don't say anything about that. We still send those back as a matter of custom. I think the same is true with real estate transactions. And Barton seems to be of that same ilk. Now, the debate apparently in this case is coming down to how we label it. And you're labeling it, and it's not jurisdictional. In the sense of Steel Company case, you're probably right. In another sense, what principle do we apply when we don't hear a domestic relations matter? I believe that principle is abstention. It's about jurisdiction. We've treated it jurisdictionally. We don't take those cases. But you choose not to take those cases. I don't think so. Well, I haven't researched that aspect. I understand your position. Okay. All right. Thank you, Your Honor. Is there any case that says that the Barton Doctrine is one of abstention, rather than, as the district court seems to believe, subject matter jurisdiction? There actually, in our research, there isn't, because I don't think anybody ever took this position before that it is. I'm not seeing a case that says that Barton removes federal jurisdiction. Well, I know you say the district court is not dispositive on it, but let's make sure we're on the same page here. The district court, whether it was right or wrong, at least this statement is probably true, they thought that the Barton Doctrine was subject matter jurisdiction. Is that correct? Well, the district court expressed it that they believed Barton was a limitation on jurisdiction. It's one of the debates in this case because it's a relatively short order, and it certainly did not expound on exactly what it thought, and it didn't say— would indicate that it was somewhere other than subject matter jurisdiction, that it was thinking maybe it's abstention. Yes, that is one possibility, Your Honor. What we're pointing out, though, is if the court was actually saying, I don't have subject matter jurisdiction, that's not debatable. It's wrong. That can't be. A judicial decision cannot remove jurisdiction from a district court. So I have to read it as the court saying, I'm abstaining. I have some sort of limitation. I believe Barton applies. And Barton doesn't apply. Abstaining suggests that it's a discretionary function, but that you have the power to decide it. And the question is, does Barton have that kind of characteristic? I'm not sure it does. It basically says we should not be handling this. It says we should not. Not that we can't. We should not. And can't is what prevents appealability. Should not. Should not allows it. The negative sounds like it's a command. I mean, it's like you may not go home. You may go to the grocery store, which is a discretionary authorization, but you may not go home is a command, isn't it? You're right, Your Honor. And the English language is a wonderful thing. I agree with you. And we are trying to parse out what the district court did here. But on the appealability issue, the district court could not have said the district court does not have federal jurisdiction. Well, we can agree the district court didn't rely upon the Barton doctrine. It did. And then we have a case, McDaniel, which is a case in which didn't we allude to the fact that Barton is subject matter jurisdiction? Well, Your Honor, it's about subject matter jurisdiction. That's the distinction in the appealability issue. What about the distinction of McDaniel is what I'm saying. McDaniel is the case that do it. I'm just trying to get your best argument why that's not dispositive. So McDaniel in the Fourth Circuit and Conway and Gordon also in the Fourth Circuit cases considered whether a federal court should keep federal jurisdiction or not, depending upon because of the existence of a receiver in the case. And because what that court said is if the case is against a receiver and it meets the three-part test that the plaintiffs have sought to initiate an action against a receiver, not the case here, the action was not initiated by us, number one. It was not against the receiver, number two, for acts that the receiver performed in its official capacity, number three. The Barton Doctrine applies when those three tests have been met. And McDaniel agrees with that. We agree with that. None of those attributes exist in this case. There is not a case against the receiver. You know, that's very – Barton, of course, was focusing on its facts. But the issue really is here we have a state court creating a receivership and appointing a trustee to collect the assets and dispose of them in accordance with what the court says. That receivership is now, if you're correct, we would now be taking the trustee away from the receivership and the court, the circuit court, I mean, the state court that appointed the receiver and created the receivership. We would be taking away the court's trustee and supervising them ourselves. Now, that is an enormous interference with the state process, typically a state process, to reach into a receivership, remove the receiver from the receivership, and make him adjudicate his claims in federal court. Your Honor, I appreciate it, but I don't think it is that draconian. The receiver sued – That's exactly what you're asking us to do. Your Honor, the receiver sued us. It doesn't matter. There's a receivership created by the court of equity in state. They appointed a trustee. The court did. Now, if the receivership is going to go ahead in state court, we'd have to remove the whole receivership. In other words, you're sort of breaking it apart and saying, well, because this case doesn't address the liability of the trustee himself, it doesn't fall under Barton. But the whole understanding about this is that federal courts are courts of limited jurisdiction. And the question is, should we be interfering with state-created receiverships by taking, forcing the trustee in that receivership, separating him from the appointing court and from that receivership, and making him come into federal court and litigate here where we apply federal standards? I mean, it's sort of – the way I've stated it, it's pretty heavy-handed. It does sound heavy-handed. I don't believe in reality it would be heavy-handed. But the issues in the case are insurance coverage issues. They are decided by federal courts all the time. And in gross – You're again forcing it so now. The issue is the trustee is supposed to collect the assets for the court to disperse in the receivership. Now, if the trustee is sucked up here and can only litigate here, we are totally interfering with the receivership. One of the issues up here is insurance coverage. No question about it. But if the trustee succeeds, he'll still have assets. And you're saying, well, he can take those assets and not go down to the receivership. But that really – that's pretty strong interference with the state procedure. And that's exactly what the Fourth Circuit said was the right result. We should keep this case in Gross v. Weingarten. What did we do in Conway v. Smith? Your Honor, I honestly don't recall what we did in Conway v. Smith. I think Gross v. Weingarten is the case for the Fourth Circuit. 2000 case, 217 Fed Third, 2008 – This one was a 2023 case. We referred to this Barton concerned subject matter jurisdiction. Where the receiver was sued. Not where the receiver sued and the case was removed to federal court and jurisdiction exists. Now, then there's the Barton doctrine that says, well, should we keep jurisdiction? For some of the reasons that Your Honor has described. The main reason in Barton is that we don't want receivers to be sued outside of the receivership court. You're accurate to some extent about what Barton held. But to phrase it the way you phrase it makes no distinction between the trustee or any other person. In other words, when you sue a person for misconduct, the fact that he's a trustee, there's nothing to say it should be in state court. Just because it's a state appointed official. I mean, in federal court, we sue state officials all the time under various doctrines where they violate federal law. But the question really is what is significant about a trustee appointed by a state court chancery to create a receivership and have a removal proceeding take that action. You want that action pulled up in the federal court, even though they're applying state equity principles. Your Honor, yes. The short answer to your question is yes. Removal is jurisdiction. It is good grounds for jurisdiction. It exists and Barton tells us when it goes back. And it makes clear it doesn't go back if it's a receiver that brought the lawsuit. The receiver made that choice. The receiver brought the lawsuit in the context of a receivership created by a state judge, right? In pursuit of its functions, yes. Part of its efforts to collect the assets. It did, yes, yes, yes. And the exact situation in Gross v. Weingarten. So I think you agreed a challenge. We could go to the merits of whether the district court erred in calling it subject matter jurisdiction. That's not the question before us. The question of the Supreme Court uses this word, colorable. And so all is needed is whether this is a colorable application of subject matter jurisdiction. You don't have any cases saying that Barton is an extension doctrine type case. And yet, there are at least, I should say, it's not frivolous to say that it is subject matter jurisdiction. McDaniel probably goes there. We have other cases that have gone at least in that direction. And the district court, if we construe as holding the same subject matter jurisdiction, that has to be colorable. Whatever colorable is. I mean, the Supreme Court came up with this term. I must admit, it threw me off. But I think what it meant was we're not going to go into what did happen, what did not happen on the merits of it. We only need to know, was it colorable? Because they don't want a barrage of these cases coming up on appeal when, yeah, the district court colorably said it was subject matter jurisdiction. We can't review it. That, I think, is your biggest, at least I do, I think that's your biggest hurdle in this case. I don't disagree with you. And we wouldn't have brought this appeal if it weren't simple. It is black and white. It is cut and dry. Problem with the simplicity of it is, I think it cuts against you. Because I think it's colorable, that utterance instance that the district court, for what it held, was subject matter jurisdiction. For it to be colorable, you'd have to say that Barton, a judge-made doctrine, takes away federal jurisdiction. Well, you call it a judge-made doctrine, but nonetheless, it's there. It is there. And the only question is, is it subject matter jurisdiction? Or at least colorably subject matter jurisdiction. And if the trial judge held that such, we can't review it. That doesn't mean this case doesn't go on. It's just we can't review it. If the trial judge's ruling has a basis, a plausible basis, which is what colorable to Justice Scalia seemed to mean, it has a plausible basis, you're right. That might be the ultimate question. What is it? Is it plausible? Is it preponderance? All those things come in, but the word is colorable. And for my instance, and not to beat it to death, you don't have anything that says it's abstention, whether we're going to get into all that or not, that says Barton is dead. There are cases that indicate it has a subject matter jurisdiction tone to it. It's about subject matter. And the district court did say it did it on the basis of Barton. Yes. That being the case, why is that not colorable? Because Barton can only be about abstention. It can be under the law. But it says it. How can that be? How can that be? I mean, it talks explicitly about lack of jurisdiction. And you say it's a judge-made doctrine, but it's a doctrine judge-made by the Supreme Court. Last time I checked, we're not in a position to overrule the Supreme Court. If it were a rule made by the court that somehow could take away jurisdiction, it would violate the Constitution. Well, take it up with the Supreme Court. I'd prefer not, Your Honor. But by the same token, there are exceptions to Barton, also made by judges. Well, that's a better argument. But, I mean, we're stuck with Barton. Barton says what it says. And, you know, as powerful as we may think we may be, we're not in a position to overrule the Supreme Court. Well, because there's so little time, Your Honor, let me finish my main time by suggesting that even if Barton were subject matter jurisdiction, it clearly doesn't apply. There's a three-part test, and none of the tests are met. With respect to the forum selection issue, which is the other issue in this appeal, that also is appealable. You have two cases, both Bartles and Findware, that basically say that if a forum selection clause is applied, then that's appealable. I think there's a subtle, and it's a difficult, subtle distinction, but those cases involved construction of the clause and appealing whether that construction was accurate. Whereas here, the court made a finding that the procedure was defective, and that is statutory ground for... If you look in the one paragraph where the district court made the finding and cited the removal procedure, it's based upon the existence of the forum selection clause. The forum selection clause is in the same paragraph. It says because of what that clause says, then there's an inability to consent, and therefore you didn't get consent. I understand, but there was no argument below as to what that clause said. The clause clearly said you could be sued in any court selected by the plaintiffs, and the court didn't address that. The court basically said that that precluded removal and applied the removal provision, which I agree with you. It's a very subtle distinction, but it's the second step of the analysis of whether it's a defect in the procedure as opposed to what the clause means. Those cases that held it as appealable were cases where they were construing the clause and determining whether it should apply. The Bartles case in particular has the exact words of the district court case here. Because the clause says there's a waiver of the right to remove, you can't remove, and that was found directly in Bartles to be appealed. It's almost word for word what the district court wrote is the same as the reasoning in Bartles, and this court found that to be appealable. Thank you, counsel. Mr. Sammons. Thank you. Good morning, your honors. May it please the court, David Salmons representing the receiver, Peter D. Protopappas. The district court based the remand both on a lack of federal subject matter jurisdiction under the Supreme Court's Barton Doctrine, and on a defect in removal procedure due to the lack of unanimous consent. Each ground independently bars appellate review. Each also was correct. The insurers can prevail here only by winning all four issues, both jurisdictional questions and both merits questions. Did the district court hold that it was dismissive because Barton denied its subject matter jurisdiction? Yes, your honor. The district court specifically said that because of the Barton rule that there was a limitation on federal jurisdiction. The idea that that was a reference to abstention, or that Barton has anything to do with discretionary abstention principles, I would submit is pure fiction. I think I heard my friend today say that they are the first ones to ever so assert in a court. So, and I would just point this out. This is a case that is a little different because the receiver is the one that's filing the lawsuit. Has there been a case in which the Barton Doctrine has been applied where the receiver is the one that files the lawsuit? Not that I'm aware of, your honor, but the point I would make about that is that it's important to understand what lies at the heart of the Barton Doctrine. Remember, this was a principle of jurisdiction that was well established before the Supreme Court's decision in Barton. And the Supreme Court made clear that it's grounded in a fundamental principle of equity jurisdiction, specifically in-rim jurisdiction. When a court takes property in a receivership, it takes all of the assets of the receivership estate, and the court itself has control over all of that property. That includes the claims that the estate has for monies, in this instance, for insurance coverage. The receivership court here did exactly that, and its appointment of the receiver order focuses on the insurance assets because they are, if not the only, certainly the primary asset that's available here. So if that receivership court is exercising in-rim jurisdiction, which the Supreme Court time and time again in all of these cases emphasizes is by its nature exclusive, and there's not a federal statute that says that for the first time, that's a principle of equity jurisdiction that just came with everything else in the common law to the U.S. The Supreme Court recognized that. Congress has since embodied it in section 959 that we refer to. Background common law is what informs federal jurisdiction. Absolutely, because it's a principle of the exclusive jurisdiction of the receivership court. Here it happens to be a state court receivership. Sometimes the receivership is in federal court, and that bars any other court from exercising jurisdiction without the approval of the court that has in-rim jurisdiction of all of the assets. So the key here is that all of the assets of the estate... Congress could abrogate those standards by statute, couldn't it? It could. Yes, it could. And it has not. In fact, with all respect, it's done the opposite. Let me just point this out. 28 U.S.C. 959, which we refer to as a kind of codification of the Barton Rule, has a carve-out from that common law rule and changes the result in Barton in a sense because it says that you don't have to get permission from the receivership court and get leave first with respect to any of their acts or transactions in carrying on the business. So it sort of carved out a business function exception by statute to that Barton Rule. But it predates Barton, and it is grounded in a fundamental principle of jurisdiction that applies both in federal and state court. And it's just a given that it's jurisdictional. It's because the receivership court here is exercising exclusive jurisdiction over the property of the estate. Only one court can do that. And so what my friend on the other side wants to do is sort of forget that that exclusive interim jurisdiction is primarily the claims that the estate has for insurance coverage. And what they want to do is take that, which is the very heart of this receivership estate, and pull it up into federal court and have a different court adjudicate it, which leaves very little, if anything, for the receivership court to exercise exclusive interim jurisdiction of. So this is not a case where this is some novel extension of the principles of the Barton Doctrine. This is the heartland of that principle, which is that the receivership court has exclusive jurisdiction over all of the assets of the estate. Here, the asset that's really relevant is the claim for coverage. And what they want to do is pull that out of the receivership court, put it in federal court, and leave the receivership court basically high and dry to do the job that it has exclusive jurisdiction to do. I think a number of courts have given meaning to the colorability standard. It is very deferential. Power X itself uses the term debatable. The Tenth Circuit says that it's a superficial determination of plausibility. The Ninth Circuit has said that it's colorable unless it's contrary to clearly established law. The First Circuit has said it's colorable if any other court has characterized it that way. I don't think there's any room for debate here. The court's characterization of Barton as an aspect of subject matter jurisdiction is colorable. In fact, it's required by this court's precedent. Is there some form of saying deference? Does it belong in the family of deference? When I think of something that's colorable, it's like if you just get close to it, it's like you're deferring to the district court or to something else. Is that a part of it? Or when you're thinking about abstention in this way, these terms get intermixed. And yet, if we go abstention or we go somewhere different, we're not in the realm of subject matter jurisdiction. So I do think that if I'm understanding Your Honor's question correctly, the colorability standard I do think is a highly deferential standard of review. And it's not wrong to think about colorability in terms of deference to the district court's characterization of the reasons for the remand. If anything, I think it's one of the most deferential standards that I'm aware of from an appellate standpoint. And the reason for that is to implement Congress's intent with regard to limiting appellate jurisdiction in this context. And the court in Power Act makes that clear. Again, we're not anywhere close to this being non-colorable. This court, in fact, just last year, this court in Conway expressly stated that the Barton Doctrine, quote, concerns subject matter jurisdiction, close quote. And as the court noted in McDaniel, the court said that Barton establishes what must happen before a federal court, quote, may obtain subject matter jurisdiction, close quote. So it has always been understood to be a limitation on subject matter jurisdiction. And I would just point out as well, Your Honor, that if you look at footnote 7 of the magistrate judge's report and recommendation in this case, that magistrate judge ultimately had some doubts herself about whether this really feels like subject matter jurisdiction in a traditional sense. And the district court, you know, rejected her recommendation on that point and properly applied the case law. But she says at the very beginning of that footnote, because both sides treat the Barton Doctrine as an issue of subject matter jurisdiction, the court will do so as well. And so this is pure fiction. It is an invention for this appeal to try to get this court to exercise jurisdiction. And this court should reject it. Now, for the same reasons, the insurers are wrong to assert that the Barton Doctrine only applies to suits brought against the receiver and has no application to suits the receiver brings as part of his duties to the receivership court. The Supreme Court importer expressly holds that the receivership court has exclusive jurisdiction, quote, to decide whether it will determine for itself all claims of or against the receiver or will allow them to be litigated elsewhere. All claims of or against. That is because the claims of the receiver are themselves estate assets within the receivership court's exclusive interim jurisdiction and control. And as I said, that's certainly true here. These claims for insurance coverage are the most significant by far assets in the estate. And it would if they were to succeed in removing that the federal court, I would submit it's hard to imagine a more direct conflict with the exclusive interim jurisdiction of the receivership court than pulling the core assets out and having them adjudicated somewhere else. If it's really thought of as interim jurisdiction, then it's pretty clear because jurisdiction under traditional interim doctrine is dependent on having the race in the court. Admiralty is a good example where you have that be an exercise. Once you have the thing before the court, that particular court is the only court that has jurisdiction over the thing. That is absolutely correct, Your Honor. And I think that sums up exactly the reasoning of the Supreme Court and the other courts of appeals and this court when it says this is subject under jurisdiction. That's why. It's not a principle of abstention. It's not some discretionary factors that courts get to decide whether to apply or not in any particular case. It is a mandatory rule. It's a precursor to federal jurisdiction. And it stems from the exclusive interim jurisdiction of the receivership court, whether it's state or federal. And everything flows from that. And that's how the doctrine has developed and that's what it means. And so, for example, in Barton itself, the court refers with affection to an English court's decision in the Ames case. And that case, the Supreme Court quotes in Barton this line, rejected as, quote, an idle distinction, close quote, any attempt to distinguish between suits brought by the receiver to recover monies or property rightly belonging in the estate and suits brought against the receiver to reclaim sums already under the receiver's control. So long as the suit concerns monies or property, quote, which the receiver was appointed to receive, close quote, the receivership court has exclusive jurisdiction. And that is clearly the case here. Now, Your Honor, if I may, shifting to the other basis for remand, wholly separate from the Barton doctrine, this court also lacks appellate jurisdiction. You don't need it if you win on this one. That's correct, Your Honor. And if the court would prefer, I'm happy to sort of rest there. I just said you don't need it if you win on that. No, we don't need it. As I said at the outset, they have to run the tables, if you will, on every jurisdiction issue and every merits issue. And they cannot do so. But let me just point out, because it did come up, that here the court below was very clear that it was remanding, not just to enforce a contract, but it was remanding. In fact, let me, with the court's indulgence, I'll just read it real quick. This is the penultimate sentence in the court's order that defendants have not adequately demonstrated they meet the requirement under 1446B2A that all properly joined and served defendants must join in or consent to the removal of the action. Accordingly, their objections to the report and recommendation are rejected and the case is remanded. Now, yes, the court first went through and said the reason one of the defendants doesn't have the capacity to consent is because of the enforceability of the policy language of service of supervision, which every court that has looked at those has said waives the ability to remove. I would refer the court to the Pinetop case from the Seventh Circuit, which walks through it in great detail and points out that since the 1940s, the overwhelming consensus of the federal courts is that that waives removal. So they don't have any case that says it doesn't, and their arguments that it's not implicated because somehow there's not yet been a denial of a claim was properly rejected below. This is not up on summary judgment. It's up on a remand order, so the allegations of the complaint have to be taken as true. And if there was no dispute about coverage, we wouldn't be here. They have questioned whether there's a policy or whether it's enforceable or whether it covers this. So, of course, we're here because there's a denial of coverage. What is the language in the clause that you're talking about that suggests that forum adhered to or consented to is to the exclusion of all others? Yes, Your Honor. So what the provision says, and this is standard across all of these cases, is that the insurer here, it's Berkshire Hathaway, and at the time it was Stonewall Insurance, that the provision agrees that they will, quote, submit to the jurisdiction of any court of competent jurisdiction within the United States of America that's chosen by the insured and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. And so every court that's looked at that has said that's a waiver of the ability to remove. The court applied that here and then said here, because you have multiple defendants, that leads to a lack of unanimity and, therefore, a defect in the removal procedure under 1446. I think that bears an agreement to not contest jurisdiction in Form A, but not necessarily to waive the ability to litigate in Form B. It's been understood by every court that it is an agreement to defer to whatever court the insured chooses and to do what's necessary to perfect the jurisdiction of that chosen court. To the exclusion of all others. Correct, Your Honor. And I don't think they can point to any case that has said otherwise. The only thing they point to on this, Your Honor, is two decisions from this court, which I'd like to just say a few things about because I think there's some fundamental aspects of those cases that are missed in my friend's presentation. Those two cases are Bartles and Fineware. Both of those cases involved form selection agreements, which for these purposes I think can be treated functionally the same as the service of supervision here, and it's fair to characterize that as a form of a forum selection agreement. But in Bartles and Fineware, neither one of those courts, the district courts in those cases, connected the enforcement of that contractual obligation to any defect in the removal procedure. All of the defendants that were involved were subject to the same agreement, and it was done just as a matter of contract enforcement. And most notably, the Bartles case, which my friend relied very heavily on, was removed, and the court emphasized this in multiple places in that opinion. It was removed under the Class Action Fairness Act, which has an express statutory exception to the rule of unanimity, and it permits any defendant without consent from anyone else to remove to federal court. So there was no possibility of a defect in the removal process based on a lack of uniformity in that case. It was just enforcement of the agreement. And in Fineware, a very similar thing happened. The court noted in footnote 2 of that opinion that there were other defendants that had not consented to removal, but that the plaintiffs did not raise the lack of unanimity as a basis for remand. And so, again, in neither case was there any issue related to a defect in the removal procedures. The Eleventh Circuit's decision in Overlook Garden, which is exactly this situation involving a form selection agreement and its enforcement to destroy the uniformity requirement when you have a multiple defendant removal, is exactly on point, and the court there emphasized that the Power-X decision bars appellate jurisdiction where the district court finds the lack of unanimous consent based on one of the defendant's contractual waiver. We urge the court to follow the Eleventh Circuit and not create a split on that issue. But at a minimum, that decision shows that the district court's characterization of the remand was at least colorable. Now, they try to distinguish the Eleventh Circuit decision saying it was about procedure. In this case, it was about substance. It's just not true. If you look at both cases, they're very parallel. There's an element of substance because it's about the lack of ability to consent from one of the defendants, but then it's about procedure because that inability to consent destroys the possibility for uniformity, which is required by 1446. And when a court ties it to a defect in removal, and that is colorable, which it clearly is here, as the Eleventh Circuit said, that's the end of the matter. There's no jurisdiction. For all these reasons, we would ask the court to dismiss the appeal. I'm happy to address any questions the court has, and I thank the court for its time and attention. Thank you.  Thank you, Your Honor. Very briefly. We appreciate the court's time, and Judge Niemeyer, I appreciate your questions. If the court will indulge me, I think Rose v. Weinberg, in a particular passage in it, this is very important. It's Fourth Circuit 2000, written by Judge Michael, Judge Wilkinson, and Judge Schrexler agreed. It says, even if the initial state action is in rem or quasi-in rem, there is no bar to jurisdiction in federal court in a case based upon diversity of citizenship wherein the plaintiff seeks merely an adjudication of his right or his interest as a basis of a claim against a fund in possession of the state court. This court has, in essence, Judge Niemeyer, said that it's okay, that jurisdiction can be kept and does exist with a federal court, even if there is some separation, and even if it's in rem. Now, we would debate whether this is in rem. There are no insurance policies in South Carolina. There's no res in South Carolina. But that all has to do with what's going on in the underlying action. I haven't thought about carrying the analogy out totally, but a receivership is, by definition, the court-supervised collection of assets through a trustee and the distribution of those assets by the court. In this case, I don't know if there's any evidence that there are any assets yet in the receivership, but the trustee was trying to create some assets in pursuing the claims under the insurance policies. And, of course, that was what the court was seeking to administer. The same in Gross v. Weinberg. There was a receiver. This is an action involving a receiver and a fund and a res. Did the court address the Barton Darker? No, Your Honor, the court didn't. I don't think the court addressed the Barton Darker because that's abstention, not the existence of federal jurisdiction. Thank you, Your Honor. We appreciate it very much. Thank you, counsel. We'll come down and recounsel and move on to our second case.
judges: Albert Diaz, Paul V. Niemeyer, James Andrew Wynn